OPINION
{¶ 1} Defendant-appellant Chaise King appeals his conviction and sentence from the Muskingum County Court of Common Pleas on one count of complicity to aggravated robbery, with a firearm specification, and one count of complicity to theft. Plaintiff-appellee is the State of Ohio.
 {¶ 2} On January 8, 2003, the Muskingum County Grand Jury indicted appellant on one count of complicity to aggravated robbery in violation of R.C. 2923.03(A)(2), a felony of the first degree, with a firearm specification, and one count of complicity to theft (less than $500) in violation of R.C. 2913.02(A)(1), a misdemeanor of the first degree. At his arraignment on January 15, 2003, appellant entered a plea of not guilty to the charges contained in the indictment.
 {¶ 3} Thereafter, a jury trial commenced on March 13, 2003. The following testimony was adduced at trial.
 {¶ 4} On December 2, 2002, Stephanie Galigher was working as a cashier at the Duncan Falls BP in Muskingum County. At approximately 12:15 a.m. on such date, Galigher was on the phone when a person in dark clothing, wearing a ski mask and carrying a sawed-off shotgun entered the store and demanded money out of the cash register. Galigher, who indicated that she was familiar with weapons, testified that the man brandished or pointed the sawed-off shotgun at her while she was filling a plastic grocery bag with money. After Galigher fumbled with the money while putting it into the bag, the man "said `Hurry up,' and he jacked the shotgun, dropped a shell down to the chamber." Transcript at 82. When asked how that made her feel, Galigher testified that she was "scared to death" and feared for her safety. Transcript at 82. The man then took the money, which totaled $373.00, and left the store.
 {¶ 5} During the investigation of the robbery at the BP station, Detective Roger Kelly of the Muskingum County Sheriff's Department spoke with Tony Buechner. Buechner became a suspect after a report was received on December 2, 2002, that some guns had been stolen from a house in Philo and the owners "named Tony Buechner as a suspect to not returning these guns." Transcript at 176. The guns taken from the house resembled the gun used in the robbery of the BP station. As a result of speaking with Buechner, Detective Kelly learned that appellant also was involved in the robbery and a warrant was issued for his arrest.
 {¶ 6} After his arrest, appellant told Detective Kelly that he had hooked up with Buechner and that "Tony [Buechner] was talking about picking up somebody named Boo, that this Boo would be somebody that Tony could use to do a robbery to get Tony some money." Transcript at 180. Appellant told Detective Kelly that they went to pick up "Boo" and that, when they arrived at "Boo's" street, "Boo" was walking down the street carrying a "long rifled gun." Transcript at 180. According to appellant, the three, at appellant's suggestion, then went to Wal-Mart to purchase three ski masks. While in the Wal-Mart parking lot, Buechner sold a pistol to someone he knew for $40.00. Appellant told the Detective that "Boo" got upset because "he couldn't believe that they sold the handgun because he couldn't rob somebody with the long rifled gun." Transcript at 183. Appellant and Buechner then went into the Wal-Mart and purchased the ski masks. After leaving Wal-Mart, appellant called a friend of his and asked him if appellant could purchase a gun. Appellant told the Detective that he purchased a "sawed-off shotgun with a short handle" in an Exxon station parking lot for $20.00. Transcript at 184.
 {¶ 7} On the way to Buechner's house in Philo, appellant heard Buechner and "Boo" talking about robbing the BP station in Duncan Falls. Appellant told Detective Kelly that he drove toward the BP station and, at one point, that "Boo" "grabbed the shotgun and a mask and got out of the car and ran toward the BP station." Transcript at 186. "Boo", according to appellant, later got back into the car and told appellant and Tony Buechner that he had robbed the BP station.
 {¶ 8} Thereafter, the three of them went to Buechner's house in Philo where Buechner hid the masks and gun near a bush in an alley. When asked by Detective Kelly if he knew where the gun was, appellant indicated that, after retrieving the gun from the bush, Buechner threw the gun underneath a bridge. The weapon was never recovered.
 {¶ 9} At the conclusion of the evidence and the end of deliberations, the jury, on March 13, 2003, found appellant guilty of complicity to aggravated robbery, with a firearm specification, and complicity to theft. As memorialized in an Entry filed on May 19, 2003, the trial court sentenced appellant to five years in prison for complicity to aggravated robbery, to be served consecutively to appellant's three year sentence on the gun specification. The trial court also sentenced appellant to a concurrent six month sentence for complicity to theft.
 {¶ 10} It is from his conviction and sentence that appellant now appeals, raising the following assignments of error:
 {¶ 11} "I. The trial court committed plain error in failing to define "firearm" when it instructed the jury regarding the gun specification, in violation of Mr. King's right to due process. Sections 10 and 16, Article I, Ohio Constitution; Fifth andFourteenth Amendments, United States Constitution.
 {¶ 12} "II. The trial court committed plain error in not merging Mr. King's convictions for complicity to aggravated robbery and complicity to theft, in violation of Mr. King's right to not be placed in double jeopardy. Section 10, Article I, Ohio Constitution; Fifth and Fourteenth Amendments, United States Constitution."
 I {¶ 13} Appellant, in his first assignment of error, argues that the trial court committed plain error in failing to define "firearm" when instructing the jury regarding the gun specification. We disagree.
 {¶ 14} Since appellant's counsel did not object at trial to the jury instructions, this assignment of error must be reviewed under a plain error analysis. Under the plain error doctrine, reversible error occurs only if "but for the error, the outcome of the trial clearly would have been otherwise." State v. Long
(1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus. Further, notice of plain error is to be taken only with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. Id. at paragraph three of the syllabus. The failure of a trial court to separately and specifically instruct the jury on every essential element of each crime charged does not per se constitute plain error. State v.Adams (1980), 62 Ohio St.2d 151, 404 N.E.2d 144, paragraph two of the syllabus.
 {¶ 15} Appellant, in the case sub judice, was convicted of a firearm specification pursuant to R.C. 2941.145. Such section states, in relevant part, as follows: "(A) Imposition of a three-year mandatory prison term upon an offender under division (D)(1)(a) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." In turn, "firearm" is defined in R.C. 2923.11 as follows: "(B)(1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable."
 {¶ 16} While the jury was provided with a definition of the phrase "deadly weapon" in the context of the aggravated robbery charge, the trial court never instructed the jury with respect to the definition of "firearm". However, while appellant argues that it was impossible for the jurors to have found beyond a reasonable doubt that "Boo", appellant's accomplice, carried a firearm during the commission of the robbery since the court never provided the above definition of "firearm" to them, we disagree. As is stated above, Stephanie Galigher, the BP clerk, testified that she was familiar with guns and that the individual pointed a sawed-off shot gun at her and demanded money. In addition, the videotape from the BP showed the individual pointing a gun at Galigher.
 {¶ 17} Appellant further contends that the operability of the gun was in question. Appellant points out that the gun was purchased for $20.00 from an unidentified source in a gas station parking lot, that there is no evidence that the gun was discharged either before or after the robbery, that the gun was never recovered and that there was no stipulation that the gun was operable.
 {¶ 18} Pursuant to R.C. 2923.11(B)(2), "[w]hen determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." Thus, in determining whether a firearm was operable or could have been rendered operable at the time of the offense, the trier of fact is permitted to consider all relevant facts and circumstances surrounding the crime, including any implicit threats made by the individual controlling the firearm. State v.Thompkins, 78 Ohio St.3d 383, 1997-Ohio-52, 678 N.E.2d 541, paragraph one of the syllabus. See also State v. Murphy (1990),49 Ohio St.3d 206, 551 N.E. 932. As noted by the Ohio Supreme Court in Thompkins, supra. "it should be abundantly clear that where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." Id. at 384.
 {¶ 19} Upon our review of the record and after reviewing all relevant facts and circumstances surrounding the crime, we find that appellee proved beyond a reasonable doubt that the firearm used by appellant was operable or could have been readily rendered operable at the time of the offense. At the trial in this matter, Stephanie Galigher testified that, after she fumbled with the money, the individual told her to "hurry up" and then jacked the shotgun and dropped a shell down into the chamber. Galigher further testified that she was "scared to death" and feared for her safety as a result of such actions. Transcript at 82. As noted by appellee in its brief, "[w]hile "Boo" made no explicit threats, his actions constituted an implicit threat to discharge the firearm at the time of the offense." We find, therefore, that "Boo's" actions were sufficient to establish operability of the gun.
 {¶ 20} Based on the foregoing, we cannot say that the trial court committed "plain error" in failing to define "firearm" when instructing the jury on the gun specification. In short, we cannot say that the outcome of the trial would have been different if the term "firearm" had been defined.
 {¶ 21} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 22} Appellant, in his second assignment of error, argues that the trial court committed plain error in not merging appellant's convictions for complicity to aggravated robbery and complicity to theft since they are allied offenses of similar import. We disagree.
 {¶ 23} Prior to addressing this assignment of error, we note that appellant did not raise this issue at the trial court level. Therefore, we must analyze this assignment of error under a plain error analysis. As is noted above, notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. SeeLong, supra.
 {¶ 24} R.C. 2941.25(A) addresses crimes of similar import and provides as follows: "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."
 {¶ 25} While appellant was convicted on both counts in the indictment, he was given concurrent sentences. Thus, even though the State agrees that aggravated robbery and theft are allied offenses of similar import, appellant suffered no prejudice as he was only given one sentence. See State v. Miller (Dec. 5, 1990), Holmes App. No. CA-427, 1990 WL 200366, citing State v.Mendieta (1984), 20 Ohio App.3d 18, 20, 484 N.E.2d 180. See alsoState v. Brinkley, Stark App. No. No. 1999CA00412, 2000 WL 1634070, in which this Court held, in relevant part, as follows: "[f]urther, even if we were to find that the two charges [felonious assault and aggravated vehicular assault] were allied offenses of similar import, the charges merged when the trial court sentenced appellant to concurrent terms, with the sentence for felonious assault the longer of the two sentences. Accordingly, the trial court did not commit plain error when it entered conviction and sentenced appellant for both convictions." Id. at 2.
 {¶ 26} Appellant's second assignment of error is, therefore, overruled.
 {¶ 27} Accordingly, the judgment of the Muskingum County Court of Common Pleas is affirmed.
Edwards, J., Gwin, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Muskingum County Court of Common Pleas is affirmed. Costs assessed to appellant.